# U.S. District Court
# Middle District of Florida
# Tampa Division

## GOVERNMENT EXHIBIT

**Exhibit No.:** 4

Case No.: 8:24-cr-485-CEH-NHA

UNITED STATES OF AMERICA

vs.

JULIAN ANDREWS

Date Identified: _6 /4/2026_

Date Admitted: _6/4/2026_

| Date: | 06/03/92 | . HILLSBOROUGH COUNTY SHERIFF'S OFFICE | Number: **GEN 504.02** |
|---|---|---|---|
| Revision: | 08/27/25 | **CHAD CHRONISTER, SHERIFF** | |
| Reviewed: | 08/27/25 | **STANDARD OPERATING PROCEDURE** | Page:    1 of 28 |

**SUBJECT:    EVIDENCE/PROPERTY HANDLING AND IMPOUND PROCEDURES**

I.    **PURPOSE:**  The purpose of this standard operating procedure is to define guidelines for the collection and storage of evidence/property to be impounded and stored at the Sheriff's Office.

II.    **SCOPE:**  This procedure shall apply to all Sheriff's Office personnel.

III.    **DISCUSSION:**  It is the policy of the Sheriff's Office to maintain impounded property in accordance with federal, state, and local statutes and current case law.  Handling and storage of impounded evidence/property shall be in such a manner as to preserve the integrity of the item in the condition it was received and to maintain chain of custody.

IV.    **DEFINITIONS:**

A.    **Breach of the Peace** - Acts that are of such a nature so as to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct.

B.    **Case Deputy** - The deputy or detective who is in charge of a case and responsible for final disposition of the evidence/property.

C.    **Chain of Custody** - The physical handling of property or evidence, and the electronic record of the continuity of custody of items collected as physical evidence, whether at the crime scene or elsewhere.  The connotation under the law is that the items introduced into court at the time of trial must be proven to be the same as initially obtained from the crime scene.

1.    The chain of custody begins when an item of evidence is collected, and the chain of custody is maintained until final disposition of the evidence.  Chain of custody is continuous accountability for property that is evidence.  If chain of custody of a particular item is not properly maintained and documented, that item may be inadmissible in court.

2.    Each individual in the chain of custody shall be held responsible for ensuring that integrity and control of evidentiary property is not jeopardized.  Each individual in the chain shall enter the purpose for having custody, date and time received, and ABN (address book number) into the Records Management System (RMS) Guidance Continuity.

3.    The case deputy is responsible for the collection, accountability, transportation, evaluation, and disposition of evidence.

D.    **Computer Forensic Investigator** - A Sheriff's Office employee who has successfully completed specialized training in techniques of computer seizure and data recovery.

E.    **Computer System** - Any computer monitor, CPU, hard drive, input/output (I/O) device, modem, CD ROM, or external storage device configured to work together as a unit or cabled together externally.

F.  **Currency or Jewelry Evidence Security Bag (CJESB)** - A clear plastic envelope specifically designed for impounding money or jewelry only.

G.  **District Evidence Lockers** - Secure areas at district offices used to store evidence/property. Only authorized persons shall have access to these areas.

H.  **Electronic Trace (eTrace)** - A national database administered by the Bureau of Alcohol, Tobacco, and Firearms (ATF) that is capable of comparing multi-jurisdictional firearms and firearms-related information to assist in solving crimes. The information also serves to link firearms, firearm distributors, sellers, and subject(s) in possession of specified firearms.

I.  **Evidence** - Anything that may be used during criminal prosecution or a civil court case to establish a case and to prove facts of a crime before a court of law.

J.  **Evidence Checkout Request form** - Found in the template section of the Versadex Mail (vMail) and used to request evidence or property from the Evidence Section for investigation, or transfer evidence to another agency or court, or other purposes where evidence must be removed from the Evidence Section.

K.  **Evidence Continuity** - An entry in the Versadex database system indicating an individual possessing an item of evidence.

L.  **Evidence Section** - Secure areas at the Falkenburg Warehouse Center complex used to store evidence/property. Only authorized personnel shall have access to these areas.

M.  **Handling** - Actions performed in the course of processing evidence/property (e.g., collection, identification, preservation, receipt, analysis, storage, trial presentation, and eventual disposition or destruction).

N.  **Impound** - The act of seizing evidence/property at an incident scene or elsewhere and retaining it in legal custody until its release.

O.  **Inmate Property** - Personal effects of an arrestee that are not allowable for storage within the Sheriff's Office detention facilities due to the volume or the nature of the item(s).

P.  **Money Counter Network (MCN)** - Nationwide network of money counters utilizing specialized software and a database developed by Regional Information Sharing Systems (RISS) to track and store currency involved in ongoing investigations.

Q.  **National Integrated Ballistic Information Network (NIBIN; formerly known as Drugfire)** - A database system that stores images from spent automatic or semi-automatic casings. The image is then compared to casings submitted by investigative agencies in an effort to link shootings and solve crimes.

R.  **Property** - Any property that is lost, stolen, or abandoned which has an apparent value. According to Florida Statute 705.101:

   1.  **Lost property** - Any tangible personal property which does not have an identifiable owner and which has been mislaid on public property, upon a public conveyance, on premises used at the time for business purposes, or in parks,

places of amusement, public recreation areas, or other places open to the public in a substantially operable, functioning condition, or which has an apparent intrinsic value to the rightful owner.

2.   **Abandoned property** - Any tangible personal property that does not have an identifiable owner and has been disposed of on public property in a wrecked, inoperative, or partially dismantled condition or has no apparent intrinsic value to the rightful owner.  However, vessels determined to be derelict by the Fish and Wildlife Conservation Commission or a county or municipality in accordance with the provisions of Florida Statute 823.11 are not included within this definition.

3.   **Unclaimed evidence** - Any tangible personal property, including cash, not included within the definition of contraband article, as provided in Florida Statute 932.701 (2), which was seized by a law enforcement agency, was intended for use in a criminal or quasi-criminal proceeding, and is retained by the law enforcement agency for 60 days after the final disposition of the proceeding, and to which no claim of ownership has been made.

S.   **Recording Device** - Any CD ROM, digital camera, tape drive, zip drive, jazz drive, magneto-optical drive, or hard drive used to store data that is not currently connected to an operating system.

T.   **Recording Media** - Any digital media, jazz, zip, magneto-optical disk, tape, or any other type of media used to store data.

U.   **Signature Copy** - Found on the Employee Intranet within the Docs & Forms tab, titled Property/Evidence Signature Form, and used to indicate transfer of chain of custody of property or evidence from a deputy who checks property or evidence out of the Evidence Section to another individual (e.g., laboratory technician, State Attorney, court).

V.   **Versadex Mail (vMail)** - A communication tool in the Versadex database enabling users to track items of property.

V.   **PROCEDURE:**

A.   Collection, Storage, and Transportation of Evidence/Property:

1.   All evidence/property impounded by deputies shall be maintained in the personal custody of the impounding deputy until properly transferred to the next authorized person in the chain of custody.  Impounded evidence/property shall not be held longer than absolutely necessary before submitted to the next authorized person in the chain of custody, and/or placed in the Evidence Section and logged in Evidence Section records.

2.   Impounded evidence/property shall be placed under the control of the Evidence Section or placed in the District Evidence Locker prior to the end of the impounding deputy's tour of duty.

3.   Any time evidence/property is impounded, an incident report shall be written detailing the circumstances under which the property was impounded and describing the property.

4.   Impounded evidence/property shall not be stored in any facility other than the Evidence Section or District Evidence Lockers.  Vehicles, desks, or personal lockers shall not be used for storage of evidence.

5.   The deputy who originally impounds the evidence/property shall electronically sign the Evidence Continuity by entering their ABN and system password in the custodian field after sealing and signing the evidence package.  The deputy who

transports evidence/property to the Evidence Section or to District Evidence Lockers shall enter his/her ABN and system password in the transporter field of the Evidence Continuity.

6. All impounded evidence/property submitted to the Evidence Section or District Evidence Lockers shall be properly searched, packaged, identified, marked, and recorded on a Property Report. Evidence/property not properly packaged or documented may be refused and returned to the impounding deputy for proper packaging or documentation.

   a. The deputy who packages the property shall initial, date, and record his/her ABN on each evidence package seal (red evidence tape).

   b. Standard 9" X 12" evidence envelopes shall be used for packaging whenever practical and/or possible.

   c. A CJESB with a control number shall only be used to package currency and jewelry. The use of this bag is restricted to the packaging of currency or jewelry.

   d. A clear plastic envelope shall be used for all narcotics, controlled substances, counterfeit controlled substances, prescription and over-the-counter medication, and paraphernalia. Items possibly contaminated with Fentanyl will be double-bagged and "Possible Fentanyl" will be written on the outside package. If the item is too large to fit inside the envelope and prevents the envelope from being properly sealed, an appropriate alternate method of securing the evidence will be used. This envelope shall be heat sealed and an integrity seal affixed across the heat seal and end of the package. The impounding deputy shall place his/her initials, ABN, and the date on this seal.

   e. The impounding deputy shall ensure the proper barcode label is placed on the envelope or container which includes the case number, property number, and a description of the contents. In the absence of a barcode, this information must be written on the envelope or container.

   f. All Property Reports must be properly and fully completed.

      (1) Property Case Status - the appropriate box must be entered.

         (a) Lost/Found/Abandoned - property does not have an identifiable owner, pursuant to Florida Statute 705.101.

         (b) Evidence - property which may have been used in the commission of a crime and is necessary to establish a case or prove facts of a crime.

         (c) Impound - property which has an identifiable owner and was not used in the commission of a crime or is necessary to establish a case or prove facts of a crime. The property is able to be returned to the owner without delay.

         (d) Seizure/Forfeiture - property/evidence in which forfeiture proceedings may be initiated pursuant to GEN SOP 504.01.

         (e) Inmate Property - personal effects of an arrestee that are not allowable for storage within the Sheriff's Office detention facilities. If inmate property is impounded and includes a firearm, the firearm must be entered on a separate property report and designated as being held for safekeeping to ensure all required protocols for release are followed.

Designating impounded items as inmate property implies the release of the items is approved, and the completion of a release form is not required.

7.    If the evidence/property is too large (cars, boats, planes, etc.) for typical transportation and storage, or requires processing, Evidence Section personnel shall be notified so alternate storage sites can be coordinated to ensure the integrity of the evidence. The impounding of vehicles shall be pursuant to GEN SOP 504.00 and/or 504.01. To ensure the integrity of the evidence, a deputy shall follow the transporting vehicle from seizure site to storage site.

8.    Pursuant to Florida Statute 705.102, deputies receiving a report of lost or abandoned property from citizens shall ascertain whether the person reporting the property wishes to make a claim if the rightful owner cannot be identified or located.

a.    If the finder wishes to make a claim, the deputy shall instruct the person submitting the property to sign the block on the front of the Evidence/Property Form. The person shall be required to reimburse the Sheriff's Office for expenses incurred (e.g., towing, storage, advertising).

b.    Deputies shall list a finder who wishes to claim found property on the Property Release Control Form. A notation should be made on this form that the person is a finder or claimant.

c.    If enough information is available, an FCIC/NCIC query should be run on the property.

d.    An attempt shall be made to return property to its rightful owner as soon as possible. It is the responsibility of the deputy initiating an incident report involving impounded property to attempt to determine and notify the owner of the property prior to impound. When applicable, the deputy shall ensure a supervisor approved Property Release Control Form is completed and submitted by vMail with all available information at the time of impound. Property releases require the approval of a supervisor of the rank of corporal or above.

e.    Effective April 1, 2009, the Sheriff's Office will no longer impound all found property items that are submitted to our deputies at designated Lost and Found area(s) during special events at private property venues (e.g., Florida State Fair, Strawberry Festival, Mid Florida Credit Union Amphitheater, Raymond James Stadium). Items which are surrendered to a deputy will be turned over to an authorized designee of the specific venue for retention and/or disposal in accordance with Florida Statute 705 entitled Lost or Abandon Property. The only found property that will continue to be formally impounded by the Sheriff's Office at private property venues, during special events are as follows:

(1)    Any dangerous weapons or firearms.
(2)    Any hazardous materials, as determined by the deputy.
(3)    Any illegal or contraband items, as determined by the deputy.
(4)    Any items involved in the commission of a crime, as determined by the deputy.
(5)    Any other items deemed appropriate due to a public safety or investigative concern, as determined by the deputy.

9.    Whenever possible, a photograph of impounded evidence/property should be taken. Procedures outlined in section "M.2" below shall be followed regarding

photographs.  Upon approval by the Assistant State Attorney in charge of the case, photographs may be taken to court in lieu of actual evidence.

**B.**  Money (see DSS SOP 471.03):

**1.**  Documentation:

**a.**  Money of any type, including counterfeit money, will be entered under the security category.

**b.**  Denominations shall be listed separately under the appropriate monetary value.

**c.**  The deputy shall record the CJESB control number in the item's cross-reference field.

**d.**  The deputy and the witness shall sign the Cash Impound Verification Signature Form, and the deputy shall record his/her ABN and the date on the form.  If the amount of money impounded is $500.00 dollars or more, the witness must be a supervisor (corporal or above).  If the amount of money is less than $500.00, the witness may be a deputy or a supervisor.  The witness shall conduct an independent count of the money.

**e.**  The money impounded is to be counted in the presence of the person the money was received or taken from, and they are to sign the Citizen Acknowledgement Form or Defendant Signature Acknowledgement Form, unless doing so poses a security risk or the person is no longer available.  If the person is not available, a notation of "Not Available" shall be made in the subject's signature block.

**f.**  Impounded counterfeit money will automatically be transferred to the U.S. Secret Service through the Evidence Section, unless otherwise instructed by a memorandum approved by a supervisor.  If counterfeit money in the custody of the U.S. Secret Service is needed for court, investigation, etc., the deputy must contact the Secret Service to make arrangements to take possession of the property.

**g.**  A photograph should be taken of any impounded money.  Procedures outlined in section "M.2" shall be followed regarding photographs.  Upon approval of the Assistant State Attorney assigned to the case, a photograph of seized money may be used in court in lieu of the actual money.

**2.**  Packaging:

**a.**  Impounded money, both counterfeit and foreign, shall be packaged separately from other items in a CJESB.

**b.**  Counterfeit or foreign money shall be packaged separately from authentic U.S. money.

**c.**  Large amounts of coins should be separated by denomination and rolled in coin rollers.

**d.**  Deputies shall not seal the currency/jewelry bag prior to bringing the currency/coin to the Evidence Section/District Evidence Locker.

**3.**  Impounding Money at the Evidence Section:

**a.**  All money equal to or in excess of $500.00 and money with biohazardous contamination must be impounded at the Evidence Section.

b. The evidence technician will verify the amount recorded in the Property Report matches the amount shown on the CJESB and the amount of cash and currency impounded.

c. The money will be recorded using a money counter at the Evidence Section and uploaded to the MCN through Regional Information Sharing Systems (RISS) by the evidence technician, and a copy of the printout from the money counter will be placed in the CJESB prior to it being sealed.

d. The CJESB shall be sealed at the Evidence Section following verification by the evidence technician. The sealed bag shall bear the impounding deputy's initials, ABN, and date of impound.

e. The deputy shall witness the evidence technician place the sealed CJESB containing the currency in the drop box. To verify the sealed bag(s) containing the currency was placed in the drop box, both the deputy and the evidence technician will complete an Evidence Continuity.

4. Impounding bulk money appearing to be in excess of $10,000 at the Evidence Section:

a. All money appearing to be in excess of $10,000 must be impounded at the Evidence Section and scheduled for a supervised money count at the vault of the bank designated by the Sheriff.

b. The money will be processed through the money counter, and the recorded serial numbers will be uploaded to the MCN through RISS. A copy of the printout from the money counter will be placed in the CJESB prior to it being sealed by the impounding deputy in the presence of an evidence technician and a law enforcement supervisor.

c. The CJESB shall be sealed at the Evidence Section. The sealed bag shall bear the impounding deputy's and the supervisor's initials, ABN, and date of impound.

d. The impounding deputy and the supervisor shall witness the evidence technician place the sealed CJESB containing the money in the Evidence Section intake vault.

e. The impounding deputy will need to schedule a supervised money count at the designated bank vault. A minimum of 24 hours notice is required between the notification of the designated bank and the actual count. This time period may be longer based on weekends and holidays.

f. The impounding deputy will contact the Special Investigations Division (SID) Lieutenant who will provide the contact information for the designated bank's personnel in order to request a supervised cash count.

g. Upon contact with the designated bank, the SID Lieutenant shall send an email to the designated bank confirming the scheduling of the deposit. This email should be copied to the impounding deputy, the SID Commander, and the Evidence Manager.

h. When scheduling a supervised money count, the following information shall be provided:

(1) Number of Sheriff's Office employees, their names, and ABNs (maximum of three Sheriff's Office employees including Evidence Section personnel).

(2) The Evidence Section will provide a three-part deposit slip that will be brought to the vault by the impounding deputy, along with the funds to be counted.

GEN 504.02
Page 8 of 28

08/27/25

i.  While awaiting the supervised count, the money must be safeguarded in the Evidence Section vault after being transferred from the Evidence Section intake vault at the earliest opportunity.

(1)  Under supervision, the money should be placed into certified bank bags as supplied by the Financial Services Division (FSD) and the bags sealed.  The case number should be written on both the bank bag and the tear-off strip at the top of the bank bag.

(2)  Contaminated money (reference V. B. 4. m.) shall be separated from the non-contaminated money and placed in a separate bank bag and then inserted into another bag.

(3)  The impounding deputy shall retain the tear-off strip while the sealed bag is to be stored in the Evidence Section vault until it is transported to the designated bank for the supervised count.

j.  Transporting bulk money to the designated bank vault should be completed by the impounding deputy, a sworn law enforcement supervisor, and an Evidence Section representative.  The following items must accompany the personnel:

(1)  Sealed bank bag(s) containing money.

(2)  Three-part deposit slip with bank bag tear-off strip attached.

(3)  Evidence bag(s) to transport counterfeit money, if any, back to the Evidence Section.

(4)  Evidence Cash Transmittal Form.

k.  Conducting the supervised count at the designated bank vault:

(1)  Upon arrival, the preprinted number on the tear-off strip shall be verified against the preprinted number on the bag by the impounding deputy.  There should be no signs of tampering.

(2)  The currency will be counted by armored carrier personnel, and the deposit slip will be completed prior to exiting the vault.

(3)  The Evidence Section representative attending the count shall retain the validated pink and yellow copies of the deposit slip and the bank bag tear-off strip and complete the applicable sections of the Cash Transmittal Form.

l.  Upon completion of the supervised count:

(1)  Evidence Section personnel shall assign a new property inventory item number for counterfeit money, if any, associated with the case and annotate on the evidence bag.  The impounding deputy shall complete a supplemental report regarding the counterfeit money.

(2)  Evidence Section personnel shall enter the amount of cash deposited into Workday using the case number.  There should be one batch per deposit slip for high-dollar vault deposits.  The completed Cash Transmittal Form, deposit slip (yellow copy), and bank bag tear-off strip should be attached to the batch as supporting documentation.  The pink copy of the deposit slip should be retained at the Evidence Section.

(3) The impounding deputy shall make a copy of the deposit slip and impound it into evidence.

m. Handling contaminated money during bulk money impounding:

(1) Contamination of money can be caused by the following:

(a) Floodwater or any prolonged exposure to water or other liquid.
(b) Exposure to blood, urine, feces, or any other body fluids, including removal from any body cavity, corpse, or animal.
(c) Exposure to sewage.
(d) Exposure to any foreign substance or chemical, including dye-packs used with tear gas which may pose a health hazard or safety risk.
(e) Exposure to mold or mildew.

(2) Contaminated money will need to be prepared per the Federal Reserve guidelines (see link listed below) in order for the designated bank to handle sending it to the Federal Reserve on behalf of the Sheriff's Office. Failure to prepare the money by the guidelines will result in a delay, and the Federal Reserve will return it to the vault without processing. Link: https://www.frbservices.org/operations/currency/contaminated currency coin.html.

5. Impounding Money at Districts:

a. Money, less than $500.00 and counterfeit or foreign money, shall be impounded at the District Evidence Lockers (or the Evidence Section if it is closer in proximity to the seizure location).
b. The desk deputy will verify the amount recorded on the Cash Impound Verification Form matches the amount shown on the CJESB and the amount of money impounded.
c. The CJESB shall be sealed at the District Evidence Locker following verification by the desk deputy. The sealed bag shall bear the impounding deputy and desk deputy's initials, ABN, and date of impound.
d. The CJESB and the corresponding Cash Verification Form shall be collected by an Evidence Section employee during routine collection of evidence/property impounded at districts. Should any district's total amount exceed $1,000.00, a deputy from that district shall follow the collector to the Evidence Section.
e. The CJESB will not be opened or counted at the Evidence Section, but placed in the drop box pending deposit or release.
f. If a discrepancy in money count is discovered during deposit or upon release to an owner, the Evidence Section shall notify both deputies (impounding and desk) to resolve the discrepancy.

6. Access to impounded money is limited. The deputy in need of such impounded money must contact the Evidence Section to schedule an appointment in order to take custody of the money.
7. Storage and Disposition of Currency:

GEN 504.02                                                                                08/27/25
Page 10 of 28

a.   Unless money is evidence, lost/found, or seized for forfeiture, it should not be seized and impounded for safekeeping. There must be a valid reason for impounding money for safekeeping (e.g., homicide, robbery, dispute over ownership). An arrestee's money should be taken with them to jail and impounded as their personal property.

b.   Upon being brought to the Evidence Section, the evidence technician shall determine what type of money is being impounded and ensure the Property Report is completed properly.

c.   Impounded money shall be maintained by the Evidence Section as follows, and any deviation from the below procedures shall be authorized by a supervisor approved vMail or memorandum:

   (1)   Lost/found - deposited into the bank after 90 days.
   (2)   Evidence - retained at the Evidence Section.
   (3)   Safekeeping - retained at the Evidence Section.
   (4)   Seizure/forfeiture - deposited into the bank on the next available bank run.
   (5)   Collectible money or money having a value greater than face value - retained at the Evidence Section until released.
   (6)   Foreign money - retained at the Evidence Section until released.
   (7)   Counterfeit money - retained at the Evidence Section until released to the U.S. Secret Service.
   (8)   Inmate Property - retained for 90 days after the release of the offender then deposited into the unclaimed fund.

d.   Money that requires processing shall have a Request for Evidence Processing Form completed. This form shall be submitted by vMail to the Crime Scene Section at the time of impounding the money. Money going to the Florida Department of Law Enforcement (FDLE) must have an FDLE Request for Examination of Physical Evidence through the Laboratory Information Management System (LIMS). Items will be transported by the Evidence Section. Upon completion of processing, the Evidence Section employee will transport the money back to the Evidence Section, where the money will continue to be treated as evidence.

e.   Upon removal from the drop box, the CJESB will be separated according to type of money. Money that will not be deposited into the bank will be secured in the money-jewelry vault. Money that will be deposited into the bank will be transported to FSD by the Evidence Manager/Supervisor and an evidence technician.

f.   Money deposited into the bank shall be recorded and tracked in Workday by case number, property number, item number, and amount. A copy of the deposit slip and batch form shall be provided to FSD. Deputies may request a copy of the deposit information from the Evidence Section for their records.

g.   A reconciliation report on all impounded money shall be completed monthly by FSD. An internal audit of impounded money shall be completed by the Evidence Section at least annually.

C.   Jewelry/Precious Metals and Stones (see DSS SOP 471.03):

   1.   Documentation:

a.  When jewelry, precious metals, or stones are impounded, deputies shall identify items generically in the incident report using terms such as yellow or silver colored metal, or blue, red, or clear stone, etc.

b.  The impounding deputy shall record the CJESB receipt number in the Property Report's cross-reference field.

c.  A Property Report shall be used to itemize impounded jewelry. Jewelry may be listed with other impounded items.

2.  Packaging:

a.  Impounded jewelry shall be packaged separately from other items in a CJESB.

b.  The sealed bag shall bear the impounding deputy's initials, ABN, and date of impound.

3.  Impound:

a.  If the total value of any impounded jewelry, precious metals, or stones is valued at $1,000.00 or more, the property shall be placed into evidence at the Evidence Section and not at the District Evidence Locker. For example, if a ring valued at $400.00 and a ring valued at $900.00 are to be impounded, they shall be impounded directly with the Evidence Section.

b.  When jewelry, precious metals, or stones are taken to the Evidence Section to be impounded, the impounding deputy shall witness the evidence technician place the sealed CJESB containing jewelry, precious metals, or stones in the drop box. To verify the sealed bag(s) containing the jewelry, precious metals, or stones were placed in the drop box; both the impounding deputy and the evidence technician will complete an Evidence Continuity in RMS.

4.  Access to impounded jewelry is limited. A deputy in need of such impounded jewelry must contact the Evidence Section to schedule an appointment in order to take custody of the jewelry.

D.  Controlled Substances and Other Drugs:

1.  All controlled substances (i.e., drugs), substances represented as controlled substances, or any other drugs or medicines (including over-the-counter non-prescription medications, vitamins, dietary powders, and supplements, etc.), shall be impounded accordingly:

a.  The deputy who originates the offense report shall also transport any impounded drugs or narcotic evidence to the Evidence Section. No drugs of any kind may be impounded at a district office. There will not be any deviation or exceptions to this policy without the prior approval of the Shift Commander, should extraordinary circumstances occur. If the Shift Commander approves, the deputy shall write "Approved per (Shift Commander's ABN)" in the remarks field of the Evidence Continuity.

b.  All drugs shall be weighed using the Evidence Section's certified scale, counted, and properly packaged at the Evidence Section in their original container (e.g., plastic bag, bottle), if appropriate. Discretion may be used depending on how heavy the packaging is and if the drug can be weighed separately without spillage or contamination. If the total weight

08/27/25

is determined with the packaging, this must be indicated on the affidavit and Property Report and written as such (i.e., one gram of crack cocaine, including packaging).

    **(1)** The weight of the drugs with the original packaging shall be entered in the Quantity field of the Drug Property Form in RMS. The description field will describe the item with the phrase "Weight with Package" or "WWP."

    **(2)** The weight shall be verified by the evidence technician and the impounding deputy by completing an Evidence Continuity for the item.

**c.** Pills, capsules, and tablets shall be weighed and counted, unless the amount creates an unreasonable task for counting the pills. If the pills are sealed in tamper-proof protective packaging (such as blister packs or a sealed bottle from the manufacturer) they may only be weighed.

**d.** Tests conducted on certain controlled substances have revealed if the substance is wet at the time of impound, there may be a substantial weight loss over time. Essentially, the substance dries, and with the evaporation that occurs, there may be a reduction in weight of over 30% in relation to the originally recorded weight. To compensate for any discrepancies in weight when impounding controlled substances, deputies shall annotate the following information on the Property Report and in the narrative of the Offense Report:

    **(1)** A description of the type of container(s) or package(s) in which the controlled substances are weighed.

    **(2)** If the controlled substances are wet or dry.

**e.** In the event that other items (i.e., drug paraphernalia) are submitted as evidence along with drugs, the drugs are to be weighed and packaged separately from the other items.

**f.** Different types of drugs shall be packaged separately from each other. An exception may be allowed when the drugs are mixed in the same container at the time it was seized by the deputy.

**g.** Drugs and drug paraphernalia shall be packaged in a clear plastic evidence envelope and properly sealed.

    **(1)** An appropriate size envelope shall be used. If the drugs or paraphernalia are too large to fit inside the envelope or do not allow it to be properly heat sealed, they may be packaged by other appropriate means (e.g., box, etc.).

    **(2)** The plastic envelopes shall be heat sealed.

    **(3)** The impounding deputy shall place a piece of evidence tape across the heat seal and end of the evidence envelope and initial, date, and record his/her ABN on this seal.

    **(4)** Liquid items should first be packaged in a container to prevent them from leaking or spilling.

**h.** Fresh marijuana plants should be handled as follows:

**(1)**    Photographs should be taken of marijuana plants prior to seizing the plants.

**(2)**    Seized plants shall be counted and weighed. When seizing small marijuana plants, the stalks, leaves, and roots shall be impounded intact. The dirt on the roots shall be shaken off so there will not be added weight to the plants.

**(3)**    At the Evidence Section, the plants will be placed in a paper evidence envelope, bag, or box and placed in a secure drying facility by the impounding deputy and an evidence technician.

**i.**    When seizing large marijuana plants and/or a large quantity of plants, a supervisor of SID shall be notified. If no one from SID can respond, the plants shall be uprooted and packaged according to the procedures outlined above. All marijuana plants shall be taken to the Evidence Section and not stored or submitted at a District Evidence Locker.

**j.**    All seams are required to be sealed, including packages containing trace amounts and/or residue. Plastic envelopes will be heat sealed. Paper envelopes, boxes, and paper bags will have evidence tape affixed to the seams.

**k.**    When seizing a large quantity of a drug (e.g., over 1,000 grams of cocaine, several pounds of marijuana) a small sample may be drawn and packaged separately for testing purposes. The sample will be sent to FDLE instead of the large amount. The sample is listed as a separate item on the Property Report, with a description of "Sample from item # __." Sampling procedures set forth in the FDLE Crime Laboratory Evidence Submission Manual shall be followed.

**2.**    The original incident report, Property Report, criminal report affidavit (if applicable), and state lab submittal form must show the weight of the suspected drug and indicate whether the weight does or does not include packaging.

**3.**    Field test kits shall not be entered into evidence, unless all of the drug evidence was used in the test kit. The Evidence Section will store the test kit in the freezer. No test kits shall be entered into evidence at District Evidence Lockers.

**4.**    Any time it becomes necessary to break an evidence seal on a drug package, the deputy breaking the seal shall supplement the original report recording the date, time, and reason for opening the package. Only a clean edge that contains no seal shall be opened. The item shall be re-weighed and may be field tested prior to resealing the package in a new evidence envelope.

**5.**    All drug evidence returned for destruction to the Sheriff's Office from the Clerk of the Circuit Court shall be weighed and field tested by the impounding deputy or assigned detective prior to being accepted by Evidence Section personnel. The impounding deputy or assigned detective shall supplement the original report. At no time will drugs be returned to a district location once they have been checked out of the Evidence Section.

**6.**    Drugs being returned from the FDLE lab after analysis will not need to be weighed or tested prior to being accepted by Evidence Section personnel.

**7.**    Natural Death Investigations:

**a.**    Prescription medications belonging to the decedent in a natural death investigation shall be impounded for safekeeping, unless it is a Medical Examiner's Office (MEO) case, in which they will take possession of the medications.

**b.**    These medications may be weighed and packaged together.

GEN 504.02                                                                                    08/27/25
Page 14 of 28

E.    Sexual Battery Investigations:

1.    Sexual Battery Examinations Form - The Sexual Battery Examination Form that a nurse examiner completes after a sexual battery examination shall not be placed into evidence. This form shall be attached to the original incident report.

2.    Sexual Battery Kit - Sexual Battery Kits shall be placed into evidence only at the Evidence Section and shall not be accepted at District Evidence Lockers. See also GEN SOP 504.05 regarding the submission of sexual battery kits for testing, pursuant to Florida Statute 943.326.

F.    License Plate and Driver's License Seizure:

1.    If the seizure is due to a criminal act and the license plate and/or driver's license is evidence in a criminal investigation, impound as outlined in section V. A.

2.    If there are no criminal charges and the license plate and/or driver's license is not needed as evidence, the license plate and/or driver's license shall be taken to a district office and released to the desk deputy within 72 hours of seizure. The desk deputy shall complete the License Plate/Driver's License receipt log, and both deputies shall initial the log. A copy of this log shall be retained in each respective district in compliance with current records laws. The desk deputy shall be responsible for shredding driver's licenses and forwarding seized license plates to the Hillsborough County Tax Collector's Office on a bi-weekly basis.

3.    When accepting a seized license plate as a result of PIP financial responsibility suspension, the desk deputy shall complete a Hillsborough County Tax Collector Seized License Plate Form. The form shall accompany the corresponding plate to the Tax Collector's Office.

4.    If the license plate is surrendered to the Sheriff's Office by a licensed recovery agent, the agent shall be directed to the desk deputy at a district office. The desk deputy at any of these locations shall accept only license plates accompanied with a Department of Highway Safety and Motor Vehicles (DHSMV) form #74060 completed by the recovery agent. In no case shall a seized license plate be accepted without the accompanying DHSMV form #74060. Once accepted, the desk deputy shall sign the DHSMV form #74060 and retain the second copy marked "Law Enforcement Copy." It is not required that the desk deputy confirm the validity of the seizure. Any questions regarding the validity of the seizure shall be forwarded to DHSMV.

5.    The license plate and copy of DHSMV form #74060 shall be placed in the License Plate/Driver's License storage bin. The License Plate/Driver's License receipt log shall be completed, and the field titled "Reason Seized" shall have the word "repo" annotated.

6.    The desk deputy shall be responsible for forwarding collected license plates and accompanying forms to DHSMV on a bi-weekly basis.

G.    Firearms and Weapons:

1.    Seizure - Firearms/weapons should be seized and impounded only under the following circumstances:

a.    The firearm/weapon is evidence, meaning that the firearm/weapon may be used during a criminal prosecution to establish a case and to prove facts of a crime before a court of law. This includes firearms/weapons displayed, used, threatened, or attempted to be used by persons

committing or attempting to commit any felony, pursuant to Florida Statute 790.07 (2).

b. The firearm/weapon is upon a person who is arrested, as described in Florida Statute 790.08. The firearm/weapon shall be kept until the conclusion of the court case.

c. The firearm/weapon is recovered as lost or abandoned property, pursuant to Florida Statute 705.103.

d. When a firearm is surrendered, pursuant to a court-issued Firearms Order as part of a defendant's pretrial release for a domestic violence incident, the impounding deputy shall place "Court Order Required" in the remarks field of the item's property report to indicate that a court order is needed to release the firearm.

e. The firearm is subject to seizure based on a domestic violence injunction issued pursuant to Florida Statutes Chapter 741.

f. Firearms and ammunition may be seized or voluntarily surrendered to the Sheriff's Office during a Baker Act proceeding, pursuant to the Marjory Stoneman Douglas High School Public Safety Act, as described in Florida Statute 394.463 (2)(d).

g. Firearms and ammunition may be seized or surrendered to the Sheriff's Office pursuant to a temporary Ex Parte Risk Protection Order or a Risk Protection Order issued pursuant to the Marjory Stoneman Douglas High School Public Safety Act, as described in Florida Statute 790.401.

h. The firearm/weapon is given to Sheriff's Office personnel for safekeeping. In such situations, the impounding deputy shall complete a Property Release at the time of impound to release the firearm to the lawful owner upon request.

i. When a firearm is used in a breach of the peace, pursuant to Florida Statute 933.14 (3), a firearm may be seized when a deputy observes a breach of the peace, which includes the violation of any law enacted to preserve peace and good order. If a firearm is seized pursuant to Florida Statute 933.14 (3), the grounds for such seizure should be included in a supplemental report by the impounding deputy.

j. Seizure of any firearm/weapon for any other reason shall have supervisory approval prior to seizure.

2. Documentation:

a. The impounding deputy shall complete the NCIC/FCIC Supplement from the MRE description and serial number fields, and the firearms impound section fields are completely filled out (if possible). The Evidence Section will not accept the firearm or accessories if this information is not submitted through NCIC/FCIC Supplement to the Records Transcription Unit (RTU).

b. The impounded firearm(s) and firearm accessories, such as holsters, magazines, and ammunition may be listed on the same Property Report.

c. When a firearm is impounded into the evidence room, an evidence technician shall, within 48 hours, complete an eTrace submission for that firearm in the ATF's eTrace System. When an eTrace result is returned via email to the evidence technician submitting the eTrace, the evidence technician shall research the case in the Versadex RMS case management module and determine who has been assigned as the lead investigator/case manager as determined by the capacity code number "6." The evidence technician shall then assign a follow-up to the lead investigator via the case management system and select the "HETRCE"

GEN 504.02                                                               08/27/25
Page 16 of 28

handle as the responsible handle.  In rare cases where there is no "lead Investigator" assigned to the case, the case will be sent to the Investigative Sergeant in the district where the report was initiated for assignment.  If the firearm trace is incomplete or requires verification, the District/Division Commander of the impounding deputy will be notified.  It will be the responsibility of the impounding deputy to obtain or verify the firearm information necessary for resubmission to the Evidence Section for re-entry into eTrace.

d.    If the firearm or rifle is capable of ejecting a shell casing (i.e., semi-automatic) or if spent shell casings/projectiles are impounded, the impounding deputy shall complete a vMail addressed to HSCENE requesting processing for NIBIN prior to leaving the evidence room.  The vMail shall be attached to the offense report.

e.    The Evidence Section shall transport any firearms/spent casings/projectiles to be tested to the FDLE lab and retrieve the firearms the lab has tested.

f.    The evidence technician will assist the impounding deputy in verifying all information on the firearm, including:

(1)    Manufacturer.
(2)    Model.
(3)    Type.
(4)    Caliber.
(5)    Serial number.
(6)    Country of manufacturer (if not made in the United States).
(7)    Importer (if appropriate).

g.    For all impounded firearm(s) (discharged or not) and all shell casings, with the exception of seizures for Baker Acts, domestic violence injunctions, safekeeping, Temporary Ex Parte Risk Protection Orders, Risk Protection Orders, and gun buy-back programs, the impounding deputy shall submit an Evidence Processing Request for DNA and latent processing at the Evidence Section.

h.    The impounding deputy shall also complete a vMail addressed to HSCENE requesting processing for DNA, latent processing, or functionality of the firearm if the criminal investigation warrants these exams.  The evidence technician shall assist the impounding deputy in the completion of the vMail.

3.    Packaging:

a.    All impounded firearms shall be unloaded and rendered safe prior to transport to the Evidence Section.  If a firearm is unable to be rendered safe at the scene, an area to safely clear a firearm is provided outside the Evidence Section.

b.    In order to secure a firearm and before entering the Evidence Section, the impounding deputy shall place and secure a plastic tie strap with placard through the action and out the magazine well to prevent the slide, bolt, cylinder, action, etc. from fully closing.  The impounding deputy will initial the placard with his/her ABN.  They will obtain the initials and ABN of a secondary deputy to confirm that the firearm is rendered safe.

c.    Crime Scene Investigators, who are taking custody of a firearm for impound, shall first have a sworn law enforcement deputy inspect the firearm and render it safe. The deputy shall place and secure a plastic tie strap with placard through the action and out the magazine well to prevent the slide, bolt, cylinder, action, etc., from fully closing. The inspecting deputy shall initial, with ABN, the placard. The inspecting deputy may then provide the firearm to the Crime Scene Investigator, who will conduct a visual inspection of the firearm to confirm it is rendered safe. The Crime Scene Investigator will initial, with ABN, indicating they have inspected the firearm. The Crime Scene Investigator will then take custody of the secured firearm for impound.

(1)    Deputies shall not secure or render a firearm safe prior to the arrival of the Crime Scene Investigator, unless required and in the interest of public safety.

(2)    If an impounded firearm is removed from the Evidence Section and taken for evidence processing or NIBIN testing and the plastic tie strap is removed, the Crime Scene Investigator shall complete the following prior to impounding the firearm again.

(a)    The Crime Scene Investigator shall render the firearm safe and secure the firearm with a plastic tie strap with placard through the action and out the magazine well to prevent the slide, bolt, cylinder, action, etc. from fully closing. The Crime Scene Investigator shall initial the placard with his/her ABN. The Crime Scene Investigator shall obtain a second visual inspection from a Crime Scene Section supervisor or a sworn law enforcement deputy. The secondary inspector shall initial, with ABN, indicating they have inspected the firearm.

(3)    If an impounded firearm is removed from the Evidence Section by a deputy or Crime Scene Investigator for evidence or court hearing purposes and the plastic tie strap is removed, the impound and verification process outlined above shall be followed.

d.    For firearms that cannot be rendered safe resulting from damage or functional issues, the Evidence Section should be contacted before entering the facility. The impounding deputy will have a secondary deputy verify the firearm cannot be rendered safe. The Evidence Section will not handle these firearms but will instruct deputies through the impound process up to and including placement into the firearm safe.

e.    The impounding deputy or Crime Scene Investigator shall package firearms to be impounded as follows:

(1)    The firearm and one magazine, if appropriate, shall be packaged in one gun box.

(2)    Spent shell casings shall be packaged in a separate envelope.

(3)    Bullets (live or spent) shall be packaged in a separate envelope. Spent bullets known, or suspected, to be contaminated with human blood or body fluid are considered to be biohazardous materials and shall be handled in accordance with GEN SOP 504.04.

      **(4)** Items which are not normally submitted to FDLE (e.g., holsters, gun cases, or extra magazines) may be packaged together.

  **f.** Any firearm (including air or BB guns) impounded shall be unloaded and packaged and the words "FIREARM-UNLOADED" shall be stamped or printed in bold letters (using red ink) on the outside of the front and back of the gun box.

  **g.** The evidence technician shall assist the impounding deputy in packaging the firearm.

  **h.** In order to prevent immediate and irreversible oxidation from occurring to firearms recovered from water before they can be treated and tested at the lab, the following procedures should apply:

      **(1)** Firearms recovered from fresh water should not be removed from the water without first placing the firearm in a watertight container that contains water from where it was recovered.

      **(2)** Firearms recovered from salt/brackish water should be coated with some type of gun grease (i.e., cosmoline) or gun oil.

**4.** Impound:

  **a.** All firearms, bullets, and spent casings shall be placed into evidence at the Evidence Section.

  **b.** Other weapons such as TASERS, stun guns, and paintball guns may be impounded at District Evidence Lockers. With the exception of paintball guns, these objects should be packaged in a gun box.

  **c.** All firearms used or implicated in a suicide shall be held in the Evidence Section for a period of one year after the determination of the suicide, unless directed otherwise by a valid court order. The detective assigned to the suicide investigation shall re-contact the next of kin or owner of the weapon after the one year period of time to ascertain their wishes for disposal or release. The detective will then consult with the supervisor of the investigative component responsible for the initial investigation and complete the release, if appropriate.

**H.** Test-Fire Shell Casing Collection Procedure:

**1.** Determine if the complainant/victim is in possession of the original/manufacturer packaging/box for the stolen or missing firearm.

  **a.** Determine where the firearm was purchased, e.g., manufacturer direct, retailer, third-party private seller, and notate this in the offense report.

**2.** Determine if the packaging still contains the test-fire shell casing(s) provided by the manufacturer upon purchase. Notate if the test-fire shell casings packaging is sealed or unsealed in the supplement of the offense report.

**3.** Obtain the owner's consent to collect the casings and ensure this is captured on BWC or in the form of a written waiver.

**4.** Once the above requirements have been satisfied, photograph the box/packaging, to include clear photographs of the casings in the original packaging.

5.     Collect the shell casings in the container provided by the manufacturer, e.g., envelope, baggie, etc.

6.     Enter the collected casings as "evidence" and mark the items as manufacturer provided test fires in the Property Description Field.

7.     Complete a NIBIN processing request. This can be done at the latent investigation level or at the patrol level.

8.     Information to consider when determining if collecting test-fire casings is appropriate:

      a.     If the casings are not kept in the original box/packaging, do not collect them.

      b.     If there is any question as to the validity of the casings, do not collect them.

      c.     Ensure the casings are of the same caliber as the firearm in question.

I.     Sharp Objects:

1.     Any sharp object (e.g., hypodermic needles, TASER probes, razor blades, fixed blade knives, etc.) shall be wrapped in a protective cover prior to packaging to prevent puncturing through the package.

2.     The words "SHARP OBJECT" shall be stamped or printed in bold letters (using red ink) on the outside of the front and back of the package.

3.     Due to health concerns, the FDLE lab will only accept submission of syringe evidence (not the syringe). Syringe needles should be properly disposed of at a medical facility, with EMS, or at the Evidence Section.

J.     Flammable Liquids:

1.     Gasoline or other flammable liquids will be drained from all containers and engines (except vehicles) prior to impounding.

2.     If necessary, small samples of the liquid may be bottled and taken to the Evidence Section for lab analysis submittal.

K.     Bicycles:

1.     Bicycles may be impounded at district offices and kept in a secure area.

2.     Bicycles shall be tagged with the item barcode.

3.     Found or abandoned bicycles should only be impounded if there is additional information suggesting the bicycle is stolen or was involved in a crime.

L.     Lost/Found Property:

1.     When found property having a serial number is impounded, the impounding deputy shall ensure FCIC/NCIC is checked to determine if the property is stolen and to attempt to identify the owner of the property.

2.     If the property is not reported stolen and the owner cannot be identified, the impounding deputy shall ensure serial numbers are properly recorded on the Property Report for FCIC/NCIC data entry.

3.     A Property Release Control Form authorizing the release to a known owner will be submitted at the time of impound via vMail. The RMS will automatically generate a disposal request after 90 days for found property.

GEN 504.02                                                                          08/27/25
Page 20 of 28

**M.**     Audio, Video, and Photographic Evidence:

**1.**     Investigative audio, visual, or digital photographic evidence that could later be used in court shall be impounded as evidence.  Due to storage requirements, audio, video, and digital photographs will be packaged separately from other evidence.

**2.**     When digital photographic media is used, it shall be impounded in accordance with GEN SOP 504.022 and/or 504.023.

**3.**     Digital photographs taken relative to a Street Check shall be uploaded to Evidence.com or attached to the Street Check via import into Versadex RMS.

**4.**     The quality of the recording shall not negate the fact that the recording shall be handled as evidence.

**5.**     A deputy using his/her personal recording equipment is not exempt from this policy.

**6.**     All photographs and electronic or optical photo storage media taken in the course of an investigation shall be, and remain, the property of the Sheriff's Office. (Note: "Taken" means photographed by action of the camera; it does not mean seized, confiscated, or impounded from a person.)

**7.**     Audio, video, or photographic evidence contained on digital media, such as compact discs (CD) or digital video discs (DVD) shall be first copied using the CD/DVD duplicator tower located at each of the district offices.  Copies shall be clearly labeled with the appropriate case number and will be stored in individual protective sleeves.  Originals shall be impounded into evidence or forwarded to Creative Services as appropriate after duplication.

    **a.**     Copies of cases cleared by arrest or direct file shall be labeled with the case number, defendant's last name and first initial, and stored until delivered to the mailroom by the assigned community service aide (CSA). The State Attorney Liaison will obtain copies to deliver to the State Attorney's Office (SAO).

    **b.**     Copies of evidence on cases requiring latent investigation shall be forwarded via inter-office mail to the appropriate section for use by detectives.

    **c.**     Upon completion of the investigation by the latent investigator, a copy of all digital evidence should be sent to the SAO via the State Attorney Liaison with proper markings on the evidence to include a case number and defendant's name.

**N.**     Return of Property Taken/Theft and Shoplifting Cases - Pursuant to Florida Statute 90.91, Evidence Code, a photograph of the stolen/recovered property shall be taken and placed into evidence in accordance with GEN SOP 504.022 and section "M" of this procedure.

**1.**     The photograph shall bear a written description of the property, the name of the owner, location of the theft, name of the investigating officer, date of the photograph, name of the photographer, signature of the photographer, and an oath signed by the law enforcement officer stating the photograph depicts a true representation of the item returned to the owner.

**2.**     Only printed digital or Polaroid photographs shall be used for documenting items returned to an owner, and the required information and signatures shall be printed on or affixed to the photograph.  Film (35 mm) or other digital media

devices shall not be used, unless the photograph is immediately printed and submitted as evidence.

3. Printed digital photographs and/or Polaroid photographs shall be placed into evidence in accordance with Section "A" of this procedure.

4. Digital photographs shall be uploaded to Evidence.com.

**O.    Bones or Body Parts:**

1. The impounding deputy will complete a Property Report. Upon impound, the impounding deputy will complete an Evidence Continuity with the evidence technician.

2. The impounding deputy will contact the MEO and a Homicide Section Supervisor.

   a. If the MEO is able to immediately accept the bones or body parts, the impounding deputy will submit a supervisor approved Evidence Checkout Request by vMail to the Evidence Section to sign out the bones or body parts for transport to the MEO. A Property Release Form transferring to an agency will be made for the impounding deputy to have the responsible representative of the MEO sign for the bones or body parts. The Property Release Form will be returned to the Evidence Section.

   b. If the impounding deputy is not able to make arrangements with the MEO, or if the MEO is unable to immediately accept the bones or body parts, the bones or body parts will be packaged and stored in the freezer. The impounding deputy will contact the MEO on the next normal business day to make arrangements for the MEO to accept the bones or body parts.

**P.    Food and Beverage Items:**

1. As a rule, perishable food items will not be accepted at the Evidence Section. Exceptions may be made on an individual case basis in situations, such as food contamination, and arrangements have been or will be made with the Food and Drug Administration or appropriate testing laboratory to have the food items picked up as soon as possible.

2. Perishable food items will be stored in a refrigerator or freezer, as appropriate.

3. Canned food items may be accepted as evidence in limited amounts. Every attempt will be made to photograph the items and return them to an identifiable owner instead of impounding them.

4. In certain criminal incidents, a sample of liquids in open beverage containers may be obtained and impounded. The remaining liquid shall then be disposed of. The sample will be forwarded to FDLE for analysis.

**Q.    Traffic Citation Evidence - only the following can be submitted under a citation number:**

1. Driver's license or photocopy of the driver's license.

2. License tag/decal sticker or photograph of the license tag/decal.

3. Alcoholic beverage containers. It is recommended that a photograph is taken of the beverage container and impounded in accordance with GEN SOP 504.23.

**R.    Impounded/Hold Vehicles:**

1. GEN SOP 504.00 outlines procedures for impounding a vehicle or placing a vehicle on hold.

GEN 504.02
Page 22 of 28

08/27/25

**2.**     Unless the vehicle is being seized for forfeiture, as provided in GEN SOP 504.01, all vehicles are to be impounded and towed to private tow yards utilizing the Sheriff's Office rotation list.

**3.**     Traffic crash and crime scene vehicles may also be stored at the Evidence Section at the written request of the SAO.

**S.**     Computers and Electronic Equipment:

**1.**     Seizure/Impound:

**a.**     When a computer is to be accessed, seized, and/or processed for a white-collar computer crime investigation, the impounding deputy shall contact the Economic Crimes Section Sergeant.  The sergeant will assign a computer forensic investigator to assist the requesting unit.  If, during an investigation involving child pornography or a seduced and/or enticed missing juvenile (computer-related), a computer or related item needs to be seized, the impounding deputy shall contact the supervisor of the Internet Predator Unit and/or the supervisor of the Special Victims Section.

**(1)**     The computer forensic investigator will assist in the seizure of the target system and media.

**(2)**     If a computer forensic investigator is not available to seize or impound the property, only employees under the direction of a computer forensic investigator shall power off, disconnect, power on, or access a computer system, recording device, or recording media that is to be seized.

**b.**     A certified data recovery laboratory or computer forensic investigator will process seized devices and media for evidence.

**2.**     Packaging:

**a.**     Computers, external computer memory storage devices, computer storage media, cell phones, and any similar equipment shall be packaged separately from other items and packaged in anti-static bags.

**b.**     Computer peripherals, computer equipment, electronic cash registers, stereo systems, televisions, monitors, or other electronic equipment too large to be packaged in a regular evidence envelope should be packaged separately from other items.

**3.**     Storage: Computers, external computer memory storage devices, computer storage media, computer peripherals, computer equipment, cell phones, electronic cash registers, stereo systems, televisions, monitors, and other electronic equipment shall be stored in the Evidence Section in an area separate from other property items.

**T.**     Biological or Chemical Agents:

**1.**     No biological or chemical agents (e.g., anthrax, cyanide, poisons, etc.), or agents suspected of being such, shall be impounded at the Evidence Section. Procedures set forth in GEN SOP 504.04 shall be followed for such agents.

2.    OC, MACE, etc., may be impounded at the Evidence Section.

U.    Restrictions - The following items shall be placed into evidence at the Evidence Section and shall not be accepted at the district:

1.    All biohazardous materials (e.g., sexual battery examination kits, Blood Alcohol Content (BAC) kits and any evidence/property known or suspected to be contaminated with human blood or body fluid).  Biohazardous materials shall be handled in accordance with GEN SOP 504.04.

2.    Drugs of any kind.

3.    U.S. currency in excess of $500.00 or any amount/type of currency with biohazardous contamination.

4.    Jewelry, gemstones, or precious metals having an apparent value in excess of $1,000.00 or more.

5.    Items too large to be stored within District Evidence Lockers.  The district desk deputy should be consulted regarding any questionable evidence/property prior to the items being transported to the district office.

6.    Hazardous Materials - materials that may be toxic or hazardous shall not be impounded unless such material has been certified safe by a competent authority.

7.    Explosives - cylinders containing gaseous material and other explosive devices (other than firearms, common ammunition, and small amounts of common fireworks) shall be cleared through a member of the Bomb Disposal Team prior to impounding.

8.    Firearms, bullets, and spent shell casings.

V.    Impounding Personal Effects of Arrested Subjects:

1.    Any property taken will be inventoried and documented in the incident report.

2.    Bulk items will be impounded following established Sheriff's Office guidelines based on the type of property items to be stored.

3.    The subject's name and contact information will be added to all impound items.

## VI.    **TEMPORARY SIGN-OUT OF EVIDENCE:**

A.    For timekeeping purposes concerning court, off-duty travel time shall begin one-half hour prior to arrival at the Evidence Section to pick up evidence.  Travel time shall conclude one-half hour subsequent to leaving the Evidence Section to return evidence (or the court signature copy) immediately pursuant to leaving court.

B.    Access to impounded money and jewelry is limited.  The deputy in need of such impounded property must contact the Evidence Section to schedule an appointment in order to take custody of the property.

C.    No evidence shall be checked out for court purposes until the day of the court appearance.  Exceptions to this must be approved by a supervisor on an Evidence Checkout Request Form and submitted to the Evidence Section by vMail before the evidence is checked out.  "Day of court" starts at midnight that day.

D.    No evidence shall be checked out for any purpose, unless the deputy presents the Evidence Section with a valid identification card (Evidence Section personnel shall run the ABN of the deputy prior to releasing any evidence) and:

08/27/25

1. A subpoena issued to the presenting deputy which lists the court or Sheriff's Office case number on the subpoena; or

2. A completed Evidence Checkout Request form approved by a supervisor.

    a. Only one case number may be listed on the form.

    b. The property number(s), item number(s), and property description(s) must be included.

    c. A purpose or reason for removing the evidence or property must be indicated.

    d. The requesting deputy must send the Evidence Checkout Request to his/her supervisor by vMail, and the supervisor must forward the vMail request to the Evidence Request Handle.

    e. Completed forms will be attached to the General Offense Report.

    f. An Evidence Checkout Request is not needed to view evidence at the Evidence Section, provided the evidence does not leave the Evidence Section facility.

    g. On evidence checkouts involving a large number of items from the same case (i.e., homicide), or involving several cases (i.e., narcotics being taken to FDLE for testing), the pertinent information may be typed on a single sheet of paper and signed by a supervisor.

E. Any evidence envelope that has been opened shall be placed in a new evidence envelope and properly sealed. A notation of "Repacked" and the new date, along with initials and ABN, shall be written on the new envelope. Larger items that have been placed in bags or boxes shall be properly sealed in their original package, if possible.

F. With the exception of an item sent for testing or to be used for a narcotics operation, whenever evidence containing a controlled substance is signed out and opened for investigative or court purposes, the person checking out and returning the evidence shall field test and weigh the controlled substance at the Evidence Section in the presence of a law enforcement supervisor upon its return. After testing and weighing the item, the deputy shall place the item in a new evidence envelope and seal it. The original evidence package and subsequent packages shall be placed inside the new evidence envelope. The deputy shall, in legible writing, initial, date, and note his/her ABN on the evidence seal.

G. The deputy shall complete a supplement reference his/her action, noting the results of the field test, the weight of the item, and the supervisor present.

H. A Court Property/Evidence Release Signature Copy shall be provided whenever evidence or property is removed from the Evidence Section for the purpose of court, transporting to a laboratory for testing, or transferring the property to another agency or individual outside of the Evidence Section.

1. If the court retains evidence, the deputy shall have the responsible representative of the court sign the Signature Copy in order to maintain chain of custody.

2. The transporting deputy shall ensure the printed name, signature, and identification number (e.g., driver's license number, personnel identification number, Florida Bar Association number) is obtained on the form in a legible manner. If the information is illegible, the form will be returned to the transporting deputy, who will be required to obtain a legible copy.

   3.   The Signature Copy shall be personally returned to the Evidence Section or retained in the District Evidence Lockers for the Evidence Section's district run; it shall not be forwarded via inter-office mail.
   4.   The deputy shall complete a supplement to the original incident report and attach a copy of the Signature Copy.

I.   All evidence checked out for court or investigative purposes shall be returned to the Evidence Section as soon as possible after the conclusion of the trial or investigation.

   1.   Evidence checked out for court shall be returned by the end of shift, unless retained by the court.
   2.   If the evidence is needed for more than one day in court and it is not retained by the court, the evidence shall be brought back to the Evidence Section.  At no time shall evidence not needed for court be brought back to a District Evidence Locker.
   3.   Evidence checked out for investigation shall be returned within 15 days, unless it is being returned to an owner or needed for further investigation.  If evidence must be retained for further investigation beyond 15 days, a memorandum from the deputy's supervisor authorizing the extension must be forwarded to the Evidence Section.  The memorandum must include the case number, inventory number(s), item number(s), item description(s), and an anticipated date of return of the evidence.
   4.   The Evidence Section shall follow up on evidence not returned from court within 24 hours or on evidence checked out for investigation for more than 15 days to determine the status of the evidence.  The Evidence Section shall contact the on-duty Shift Commander or lieutenant of a deputy who does not return controlled substances to the Evidence Section within 24 hours.  The Shift Commander or lieutenant shall contact the deputy to determine the location of the evidence and the reason it was not returned.  Items sent out for laboratory testing purposes shall be excluded from this follow-up.

## VII.   SUBMISSION OF EVIDENCE TO THE LABORATORY:

   A.   Evidence requiring laboratory analysis shall be submitted to FDLE or the Federal Bureau of Investigation (FBI) or another approved testing facility.

      1.   FDLE requests shall be accompanied by a Laboratory Analysis Electronic Packing Slip Request.
      2.   FBI requests shall be accompanied by a letter on Sheriff's Office letterhead signed by the respective District/Division Commander of the deputy submitting the evidence.
      3.   The Evidence Section is responsible for the transport or shipment of evidence requiring laboratory analysis to FDLE.  The Evidence Section Manager maintains a schedule for testing/transport of narcotics and controlled substances to the FDLE laboratory.

   B.   The submission of evidence to the laboratory shall be at the direction of the lead detective, the originating deputy in a case, or the SAO.  Pursuant to Florida Statute 943.326, all sexual battery kits or other sexual offense DNA evidence, if a kit is not collected, shall be forwarded to the FDLE within 30 days of receipt of such evidence. Additionally, all sexual battery kits or other DNA evidence related to an alleged sexual offense will be submitted to FDLE within 30 days of a request to have the evidence tested when such request is made by the victim, the parent/legal guardian, or legal representative of the victim, if the victim is a minor, mentally disabled, or deceased.

**C.** Any liquid blood, seminal fluids, physiological stains, tissue, or biological material of a perishable nature should be submitted to the laboratory for analysis as soon as possible after collection.

**D.** Items may be hand-carried by Evidence Section personnel or sent by common carrier. In an emergency, or as approved by the District/Division Commander, evidence may be transported to a laboratory by the case deputy.

**E.** If sent by common carrier, such as U.S. Mail, United Parcel Service, or Air Freight, it should be sent certified with a return receipt requested to maintain chain of custody.

**F.** A request for examination of evidence or transmittal letters must be prepared and sent with evidence.  This form or letter contains the following information:

1. Submitting agency and address.
2. Deputy to whom report of findings is to be made.
3. Type of offense.
4. Date of offense.
5. County of offense.
6. Agency case number.
7. Victim(s) name.
8. Suspect(s) name.
9. List of items being submitted.
10. Type of examinations being requested on each item.
11. Brief summary of the case.

**G.** All items of evidence should be packaged in separate appropriate containers and sealed so there can be no cross-contamination.

**H.** Each item shall be clearly marked.

**I.** Note any warning on the package such as: "WARNING: Liquid blood inside. Refrigerate upon arrival."

**J.** A copy of the evidence request form or transmittal letter, the certified receipt, and the return receipt from the laboratory when returned shall be made a part of the report.

**VIII.** **USE OF RELEASED EVIDENCE/PROPERTY IN LATENT/UNDERCOVER INVESTIGATIONS OR FOR OTHER SHERIFF'S OFFICE NEEDS:**

**A.** Conditions:

1. Evidence/property must have been seized in a criminal case or be unclaimed lost property.
2. The Sheriff's Office shall attempt to return the property to the lawful owner, if other than a criminal defendant.
3. No claims have been made for the return of the property.
4. The criminal case(s) disposition must have been determined by the court at least 60 days prior, and unclaimed lost property held at least 90 days prior to the use of the property, in accordance with Florida Statute Chapter 705.
5. The property must not be pending forfeiture proceedings.

6.    A Property Release Control Form or Evidence Disposal Notification, one for each case, must be completed on all property to be used.

B.    Procedures for the Use of Evidence Property:

1.    The person requesting property shall submit an inter-office memorandum for special request via his/her chain of command to the Evidence Section stating the specific need for the property.  The request shall include an itemized list of the property desired by case number, if known.  If approved, the requested items will be transferred to the requesting person or office.  Upon receipt of the items, the person requesting the property shall submit a copy of the approved request along with the itemized list of the property to FSD - Assets Unit.  In accordance with GEN SOP 504.03, Sheriff's Office Property Accountability, the property must be inspected and tagged by a member of the Assets Unit in order to identify these items as Sheriff's Office owned property.  General requests for items from unknown case numbers will follow the same procedure.

2.    When drugs are removed from the evidence of one case and used in another investigation, the investigating deputy shall include the original case number and evidence number in the new investigative report.  Details surrounding the removal of the evidence shall be articulated in detail.

3.    If the property is lost during an undercover investigation, appropriate personnel shall submit a memorandum to the Department of Support Services Colonel explaining the circumstances of the loss.  This memorandum shall be placed in the investigative report file(s), with a copy routed to the Evidence Section Manager.

4.    Persons requesting temporary assignment of impounded firearms shall follow the procedure outlined in GEN SOP 551.00.

## IX.    EVIDENCE VIEWINGS:

A.    SAO and Defense Counsel Viewings:

1.    Evidence viewings with the SAO and defense attorneys may be conducted in the Evidence Section viewing room.

2.    If a viewing is requested, the case deputy shall contact the Evidence Section no less than 48 hours prior to the request.

3.    The parties involved shall be briefed by the evidence technician that the case deputy must be present and complete an Evidence Continuity for all the evidence packages.

4.    After completing the Evidence Continuity, the packages shall be opened in an orderly manner, viewed, and then resealed by the case deputy to ensure the evidence does not get mispackaged or contaminated.

5.    Any evidence leaving the Evidence Section facility must be authorized with an Evidence Checkout Request form.  No form is necessary to view the evidence at the Evidence Section.

B.    Public Viewings:

1.    On occasion, viewings will be held for interested parties to identify property.

2.    The responsible deputy must be present for these viewings and shall have made prior arrangements with the Evidence Section for the viewing, as well as notification to the SAO when criminal charges are pending.

3.    The same care must be taken in public viewings as in those previously mentioned in order to maintain the integrity and safeguard of the property.

GEN 504.02                                                                08/27/25
Page 28 of 28

          **4.**    No Evidence Checkout Request form is necessary to view property at the Evidence Section.

          **5.**    The deputy may release items to the person at this time; however, a Property Release Control Form is required.

   **C.**    Media Viewings:

          **1.**    The Evidence Section shall not allow members of the media to view interior Evidence Section facilities without authorization by the Department of Support Services Colonel.

          **2.**    Members of the media may view evidence; however, the responsible deputy must be present for these viewings and shall have made prior arrangements with the Evidence Section for the viewing, as well as notification to the SAO when criminal charges are pending.

          **3.**    The same care must be taken in media viewings as in those previously mentioned to maintain the integrity and safeguard of property and evidence.

          **4.**    No Evidence Checkout Request form is necessary to view property at the Evidence Section.

**Chad Chronister**
**Sheriff**

Amends or Supersedes: SO 9702.10, SO 0107.19, SO 9703.12, SO 0110.42, SO 9703.17, SO 0110.43, SO 9706.30, SO 0112.47,SO 9806.19, SO 0303.03, SOP 504.022, SOP 504.023, SO 0408.41, SO 0005.11, DAS 330.08, SO 0703.13, SO0803.09; SO1204.04