# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                                   Case No.:  8:24-cr-00485-CEH-NHA

JULIAN ANDREWS,

      Defendant,

_____/

## ORDER

This matter comes before the Court upon Defendant's Motion to Suppress. Doc. 36. The Government filed a response (Doc. 39) and a supplemental response (Doc. 51) opposing the motion, to which the Defendant replied. Doc. 60. On June 4, 2026, the Court held an evidentiary hearing. The Court, having considered the motion, responses, evidence, and argument of counsel, will deny Defendant's Motion to Suppress.

## I.    FINDINGS OF FACT[1]

On August 21, 2022, Deputy Alexander Maldonado of the Hillsborough County Sherrif's Office ("HCSO") initiated a traffic stop for an improper tag display on a motorcycle driven by Defendant Julian Andrews. Deputy Maldonado Body

---

[1] The Court has determined the facts based on the testimony of witnesses and exhibits offered into evidence at the hearing held on June 4, 2026. Further, Defendant Julian Andrews filed deposition transcripts as exhibits to the motion to suppress. *See* Docs. 36-1 and 36-2. The Court also relied on the deposition testimony to determine the facts.

Worn Camera Footage ("BWC") at timestamp 1:55-2:15[2]; Doc. 36-1 at 6:9-18; Doc. 36-2 at 9:11-14.  Mr. Andrews stopped the motorcycle, but he then fled on foot while wearing a black backpack. Deputy Maldonado BWC at timestamp 1:55-2:15. As he ran away, Mr. Andrews removed the backpack from his back to the front of his body. *Id.* Deputy Maldonado tased Mr. Andrews. *Id.* Mr. Andrews fell forward, causing the backpack to land under Mr. Andrews' torso area. Deputy Zachman removed the backpack from under Mr. Andrews.

While placing Mr. Andrews under arrest, Deputy Zachman smelled weed and stated, "All over weed. All I smell is weed." *See* Deputy Maldonado BWC at timestamp 2:25; Deputy Zachman BWC at timestamp 2:00; Doc. 36-1 at 19:17.

Also during the arrest, the following conversation transpired:

**Deputy Maldonado:** What do you got on you? Why did you run?

**Mr. Andrews:** Somebody gave…

**Deputy Maldonado:** Do you have a gun on you?

**Mr. Andrews:** All I was doing…He told me to bring that stuff down there.

…

**Deputy Maldonado:** Where's that bag? *(Deputy Maldonado searches with his flashlight.)*

**Mr. Andrews:** I just got on the bike, and somebody said, "Take the bookbag up the street." That's it.

---

[2] At the June 4, 2026 motion to suppress hearing, the Government published the body-worn camera footage ("BWC") of Deputy Maldonado and Deputy Zachman. A copy of the footage is available via the Clerk's Office for the Middle District of Florida.

**Deputy Zachman:** Why were you trying to get rid of this? *(Deputy Zachman picks up the backpack and holds it up.)*

**Mr. Andrews:** It ain't mine.

**Deputy Zachman:** Alright, so it's probably a gun in here?

**Mr. Andrews:** I don't know what's in there. It's all type of [stuff] in there. Fireworks, I don't know. I was just on the bike.

*See* Deputy Maldonado BWC at timestamp 3:32-7:30.

Deputy Zachman then conducted an initial, cursory search of the backpack. *See* Deputy Zachman BWC at timestamp 6:49-7:02.

At the time of his arrest, Mr. Andrews was the subject of four active warrants. Doc. 36 at 12:24-13:5.

After Mr. Andrews was secured in the patrol vehicle, Deputy Zachman searched the backpack and found illegal contraband. *See* Deputy Zachman BWC at timestamp 9:50-11:30.

Standard operating procedure "GEN 565.00" outlines the HCSO's policy for conducting warrantless searches. Doc. 55-1. Standard operating procedure "GEN 504.02" outlines the agency's policy for impounding property. Doc. 55-2.

Deputy Maldonado conducted a custodial interrogation of Mr. Andrews at the hospital, during which Mr. Andrews admitted he was going to be paid in cocaine to transport the backpack and the bike from Point A to Point B, but he did not know what was inside the backpack. Doc. 36-1 at 19:23-21:3.

Mr. Andrews presents two arguments as to why the evidence should be suppressed. First, he submits that the search was not a valid "search incident to arrest"

3

as permitted under *Gant v. Arizona.* Doc. 36 at 2. Second, he claims the evidence should be suppressed because the inevitable discovery doctrine does not apply. *Id.* at 3. Further, Mr. Andrews argues his statements should be suppressed as "fruit of the poisonous tree" because they were obtained after an illegal search. *Id.* at 5. At the hearing held on June 4, 2026, counsel for Mr. Andrews specified that he is moving to suppress statements Mr. Andrews made during the arrest and statements he made later at the hospital.

The Court will first address suppression of the physical evidence obtained from Mr. Andrews' backpack before turning to suppression of Mr. Andrews' statements.

## II.    DISCUSSION

### A. Physical Evidence

#### *Inevitable Discovery*

Mr. Andrews argues the inevitable discovery doctrine does not apply because the Government cannot produce a standardized policy mandating the search of a bag in this circumstance. Doc. 36 at 4. Mr. Andrews also avers that the Government cannot prove that the backpack would have been inevitably subject to an inventory search. *Id.* at 4. The Government responds that the inevitable discovery doctrine applies because the deputies would have arrested Mr. Andrews for his outstanding

warrants and resisting without violence, and, in turn, the deputies would have conducted an inventory search before impounding the property. Doc. 39 at 5.

Under the inevitable discovery doctrine, evidence obtained via an illegal search is admissible if the Government can establish that the evidence would have been discovered by lawful means. *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015); *United States v. Russell*, No. 21-14081, 2023 WL 2062592, at 7 (11th Cir. Feb. 17, 2023). The Government must also establish that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal search. *Johnson*, 777 F.3d at 1274. However, police cannot use the label of "inventory search" as a guise to rummage through an arrestee's containers to discover incriminating evidence. *Fla. v. Wells*, 495 U.S. 1, 4 (1990). For an inventory search to be valid under the Fourth Amendment, it must be regulated via the police agency's policy. *Id*. at 4-5.

Here, Deputy Maldonado testified at the hearing that he initiated a traffic stop on Mr. Andrews due to Mr. Andrews' obscured tag. Mr. Andrews was carrying a backpack on his person when Deputy Maldonado initiated the stop. *See* Deputy Maldonado BWC at timestamp 1:55-2:15. After Mr. Andrews stopped the motorcycle, he fled on foot. *Id.* at timestamp. At the time of his arrest, Mr. Andrews was the subject of four active warrants. Doc. 36 at 12:24-13:5. Therefore, the deputies had authority to arrest Mr. Andrews for the outstanding warrants and resisting without violence. In turn, any property on Mr. Andrews' person at the time of the arrest inevitably would have been searched when he was taken into custody, as outlined in the Hillsborough

5

County Sheriff's Office standard operating procedures regarding inventory searches and impounding property. *See* Doc. 55-1 at 8; Doc. 55-2 at 5.

Moreover, Deputy Maldonado initiated the traffic stop and began the foot pursuit before Deputy Zachman searched the backpack. *See* Deputy Maldonado BWC at timestamp 1:50-7:26; Deputy Zachman BWC at timestamp 1:36-7:09. As required by *Johnson*, 777 F.3d at 1274, the deputies were pursuing the lawful means of accessing the backpack before the backpack was searched.

Therefore, the inevitable discovery doctrine permits the admissibility of the contents of Mr. Andrews' backpack.

### *Odor of Marijuana*

The Government also argues that the search of Mr. Andrews' backpack was justified because Deputy Zachman smelled marijuana coming from Mr. Andrews. Doc. 51. Mr. Andrews' response is two-fold. First, he contends that no deputy testified that an odor of marijuana caused them to search the bag, and, in fact, Detective Zachman testified that the odor of marijuana was not the basis of his search. Doc. 60. Second, even if the odor of marijuana was present, the odor of marijuana alone does not establish probable cause to search for contraband because lawful hemp is not distinguishable from marijuana solely by sight or scent. *Id.*

The strong odor of marijuana emanating from a suspect gives law enforcement probable cause to search that suspect. *United States v. Hyppolite*, 609 F. App'x 597 (11th Cir. 2015); *see also United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) (The

recognizable smell of marijuana gives rise to probable cause supporting a warrantless search.)

In the present case, the body-worn camera footage of Deputy Maldonado and Deputy Zachman indicates that someone made a reference to "weed." *See* Deputy Maldonado BWC at timestamp 2:25; Deputy Zachman BWC at timestamp 2:00. During the evidentiary hearing, Deputy Maldonado testified that Deputy Zachman made the reference to weed. Furthermore, Deputy Zachman testified at the evidentiary hearing that he smelled marijuana while he was arresting Mr. Andrews, and he stated, "All over weed. All I smell is weed." Also, Deputy Maldonado's deposition testimony indicates that the deputies smelled marijuana. Doc. 36-1 at 19:17.

The Court is aware that during the evidentiary hearing Deputy Maldonado testified that, as of the date of the hearing, he did not remember whether he smelled marijuana on Mr. Andrews. However, the hearing occurred approximately four years after the search of the backpack. Moreover, during the hearing, Deputy Maldonado

referred to his deposition testimony, wherein he mentioned that the deputies smelled marijuana.

Because there is ample testimonial evidence that the deputies smelled marijuana emanating from Mr. Andrews, the record establishes that the deputies had probable cause to search Mr. Andrews and his backpack.

### *Search Incident to Arrest*[3]

Mr. Andrews argues that the warrantless search of the backpack was illegal because it does not qualify under the "search incident to arrest" exception. Doc. 36 at 2-3.

In its response to the motion to suppress, the Government concedes that the search does not qualify as a search incident to arrest. *See* Doc. 39 at 1. However, during the evidentiary hearing, Deputy Zachman testified he conducted a search incident to arrest, as he was searching for evidence related to the crime of resisting an officer without violence. As such, the Court will briefly address the "search incident to arrest" rationale.

Under *Arizona v. Gant*, law enforcement may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if: 1) the arrestee can access the

---

[3] The Government conceded, both in its brief and at the hearing, that the search of Mr. Andrews' backpack was not a proper search incident to arrest. *See* Doc. 39 at 1. The Court agrees.

vehicle at the time of the search, or 2) the vehicle may contain evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332 (2009).

Here, the backpack had already been removed from the vehicle, as Mr. Andrews took the backpack with him when he fled on foot. Therefore, because this case involves the search of a backpack that had already been removed from the vehicle, *Arizona v. Gant* does not apply.

Moreover, even if *Arizona v. Gant* were applicable to the facts at hand, Deputy Zachman's search of Mr. Andrews' backpack still would not qualify as a search incident to arrest. First, the record evidence does not show that Mr. Andrews was able to access his motorcycle at the time of the search. On the contrary, Mr. Andrews was already detained on the ground when the backpack was searched. *See* Deputy Maldonado BWC at timestamp 1:50-7:26; Deputy Zachman BWC at timestamp 1:36-7:09; 9:50-11:30. Second, the Court is not persuaded by Deputy Zachman's testimony that he searched the backpack because he was looking for evidence of the crime of resisting an officer without violence. It is not reasonable that Deputy Zachman would find evidence of resisting without violence in Mr. Andrews' backpack. *See Gant*, 556 U.S. 332 at 1713 (finding there was no evidentiary basis for the search where the defendant was arrested for a non-drug related misdemeanor traffic offense). Deputy Zachman's search of Mr. Andrews' backpack was not a search incident to arrest.

### *Abandonment*

In its written response to the motion to suppress, the Government argues the search was lawful because Mr. Andrews abandoned any privacy interest in the bag

when he declared it was not his. Doc. 39 at 3. Mr. Andrews did not respond to the Government's abandonment argument.

The Government bears the burden of proving, by a preponderance of the evidence, that the defendant abandoned the property in question. *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001). Whether abandonment has occurred is based on the defendant's intent, which may be inferred from act, words, or other objective facts. *Id.* at 1306. Under *Cofield*, the critical inquiry in determining whether a defendant abandoned his property is: Did the defendant *voluntarily* discard, leave behind, or otherwise relinquish his interest in the property so that he could no longer retain a reasonable expectation of privacy in the property at the time of the search? *Id.* at 1306 (emphasis added).

The following reflects the pertinent portions of the exchange that occurred between the deputies and Mr. Andrews immediately after the foot pursuit:

> **Deputy Maldonado:** What do you got on you? Why did you run?
>
> **Mr. Andrews:** Somebody gave…
>
> **Deputy Maldonado:** Do you have a gun on you?
>
> **Mr. Andrews:** All I was doing…He told me to bring that stuff down there.
>
> …
>
> **Deputy Maldonado:** Where's that bag? *(Deputy Maldonado searches for bag with his flashlight.) Id.* at 6:00.
>
> **Mr. Andrews:** I just got on the bike, and somebody said, "Take the bookbag up the street." That's it. *Id.* at 6:10-6:20.

10

> **Deputy Zachman:** Why were you trying to get rid of this? *(Deputy Zachman picks up the backpack and holds it up.) Id.* at 7:10.
>
> **Mr. Andrews:** It ain't mine.
>
> **Deputy Zachman:** Alright, so it's probably a gun in here?
>
> **Mr. Andrews:** I don't know what's in there. It's all type of [stuff] in there. Fireworks, I don't know. I was just on the bike.
>
> *See* Deputy Maldonado BWC at 3:32-7:30.

In *U.S. v. Cofield*, the defendant removed the bags from his shoulders, put them on the ground, and began to walk away from the area just before law enforcement searched the bag. *Cofield*, 272 F.3d at 1307. By comparison, here, Deputy Maldonado's body-worn camera footage shows that the backpack landed under Mr. Andrews' stomach before he was arrested. *See* Deputy Maldonado BWC at timestamp 1:55-2:15. Moreover, Deputy Maldonado testified that Deputy Zachman removed the backpack from under Mr. Andrews. Further, on cross-examination, counsel for Mr. Andrews elicited testimony from Deputy Maldonado that Mr. Andrews did not abandon the backpack.

Additionally, notwithstanding Mr. Andrews' statements renouncing ownership in the bag, he still possessed the bag when Deputy Zachman removed it to conduct a search. Therefore, it can be deduced that Mr. Andrews attempted to disclaim ownership of the backpack out of a guilty conscience and to evade criminal liability, as opposed to a conscious decision to relinquish his privacy rights in the backpack. *See United States v. Hawkins*, 681 F.2d 1343, 1346 (11th Cir. 1982) ("Because an assertion

of ownership is not, by itself, dispositive of the right to claim the protection of the fourth amendment, it follows that a disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim."); *See also United States v. Lindsey*, 691 F. Supp. 3d 1370 (M.D. Fla. 2023), aff'd sub nom. UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JOJUAN LINDSEY, Defendant-Appellant., No. 24-13953, 2026 WL 1819094 (11th Cir. June 24, 2026) (Defendant did not abandon his reasonable expectation of privacy in rental vehicle merely by making statements disavowing ownership.)

Therefore, this Court finds that the Government has not established by a preponderance of the evidence that Mr. Andrews abandoned the backpack.

### B. Statements as Fruit of the Poisonous Tree

Mr. Andrews posits that his incriminating statements should be suppressed because they were obtained as the direct result of an unlawful search. Doc. 36 at 5. During the evidentiary hearing, counsel for Mr. Andrews specified that he is moving to suppress statements Mr. Andrews made while he was being detained as well as statements Mr. Andrews made to Deputy Maldonado at the hospital. The Government did not respond to this aspect of the motion to suppress.

Testimonial evidence derived from law enforcement's illegal search or illegal seizure is the fruit of official illegality and, therefore, is not admissible evidence. *Wong Sun v. U.S.*, 371 U.S. 471, 485 (1963); *see also United States v. Timmann*, 741 F.3d 1170,

12

1182 (11th Cir. 2013) ("Under the so-called 'fruit of the poisonous tree' doctrine, admissions or confessions that the police induce by confronting a suspect with evidence obtained through an illegal search or seizure must be suppressed.") The government bears the burden of showing that the evidence was not obtained as a direct result of the illegal search. *United States v. Timmann*, 741 F.3d 1170, 1182 (11th Cir. 2013) (quoting *United States v. Crosby,* 739 F.2d 1542, 1549 (11th Cir. 1984). This requires an inquiry into the extent to which the illegal policy conduct caused the defendant's response. *United States v. Timmann,* 741 F.3d 1170, 1182 (11th Cir. 2013) (quoting *United States v. Bailey*, 691 F.2d 1009, 1013 (11th Cir. 1982)); *see also United States v. Lopez-Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) ("In determining whether evidence is tainted by a prior violation of constitutional rights, we ask 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'") (quoting *Wong Sun v. United States,* 371 U.S. 471, 488 (1963)).

Here, the deputies did not illegally search or seize Mr. Andrews. On the contrary, Mr. Andrews was arrested for resisting without violence, and he was the subject of multiple outstanding warrants. Moreover, Deputy Zachman searched the backpack because HCSO standard procedure required him to do so when taking a suspect into custody. Also, the odor of marijuana gave the deputies probable cause to

search the backpack. Therefore, there was no primary illegality that tainted any of Mr.

Andrews' statements.

Accordingly, it is hereby **ORDERED:**

1.  Defendant's Motion to Suppress (Doc. 36) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on August 12, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies:
Counsel of Record

14